NEVIN *v.* LADUE and another, overseers of the poor, &c., 3 Denio, 437—451.

ERROR from the Supreme Court. Ladue and Nelson as overseers of the poor of P. in Putnam county, sued Nevin before a justice of the peace in debt, for the penalty of $25, for "selling strong or spirituous liquors in a less quantity than five gallons at a time, without having a license therefor, contrary to 1 R. S. 680, § 15." The return of the justice states that, "on the trial, the defendant being charged by the plaintiffs with the sale of ale, strong beer, or fermented beer, without a license therefor, confesses the charge in person, and claims it is not prohibited by statute." The justice rendered judgment for the plaintiffs, for the penalty, whereupon the defendant brought a *certiorari* to the C. P., which affirmed, and he then brought error to the Supreme Court.

*Jewett,* J. delivered the opinion of the court, who says :

"If ale or strong beer answers the description of strong or spirituous liquors, the action was well sustained. I am unable to entertain a doubt but that they come within the definition of *strong* or *spirituous* liquor. Both are intoxicating liquors. *Beer* is defined by Webster to be "a spirituous liquor made from farinaceous grain, &c." The manufacture of beer and its use as an intoxicating drink are of very high antiquity. Herodotus tells us that, owing to the want of wine the Egyptians drank fermented from barley. Lib. 2, ch. 77. That the legislature intended by the 15th section to prohibit the sale of all intoxicating liquors, I think is strongly indicated by the provision of the 29th section. It enacts that "No person shall be subject to be prosecuted by virtue of the provisions of this title, for selling metheglin, currant wine, cherry wine or cider." This operates as an

exception to the prohibition in the 15th section. It is urged, that "strong or spirituous," meant only such liquors as are produced by distillation. Why, if this were so, was it necessary to insert the 29th section, as neither of the kinds of liquor there specified are produced by distillation? Judgment affirmed.

From this judgment the defendant brought error to this court.

The CHANCELLOR delivered the decision of the court, in an opinion of fourteen pages, in which those curious in such researches will find a history of ale, beer, and wine from about the hour of Adam's expulsion from the garden of Eden, even unto this day. And not only of those but of all the other strong drinks in use, among nearly all the nations of the earth where such things have been invented. Nor is this all; he also gives us an amusing and edifying account of the anti-temperance habits of the Egyptian, Nubian, and Abyssinian monkeys, who make themselves beastly drunk upon a liquor known among those nations (not the monkeys) by the name of *bouza;* the monkey name we are sorry to say is not mentioned. This liquor, he informs us, however, is made by fermenting barley and other farinaceous grains with water, but without malting the grain; and that the monkeys are so fond of it, that it is sometimes used to catch them; from which, it would seem, that they have not yet arrived at any degree of perfection in manufacturing it themselves. This is perhaps fortunate, as the Chancellor states, that they, "like the bipeds they are apt to imitate, are inclined to partake of the pleasures of the inebriating cup, without duly considering the consequences. To effect his object, the monkey-catcher places a vessel filled with *bouza* at the foot of the tree on which the animals are gamboling, and then watches at a distance until they come down to regale themselves to intoxication. And we, who have seen the effects of similar proceedings elsewhere, can readily imagine what is the inevitable result of this stratagem to the *bouzy* monkeys."

After about thirteen pages upon this and similar histories, which will be found a perfect *encyclopædia* upon the subject of strong liquors, he comes to this conclusion.

"The term *strong waters*, as used in Cromwell's statute, and in the statute 26 Geo. 2, ch. 31, was entirely different in its meaning from the term *strong drink*, as used in King James's translation of the Bible, and from the term *strong liquor* as used in the colonial act of 1713, and other subsequent statutes, to denote any intoxicating beverage, produced either by fermentation or distillation. I have, therefore, no doubt that the revised statutes prohibited the selling by retail of ale and porter and every other kind of beer which was subject to the excise duty under the statutes in England, and under the colonial act of 1713. And if the plaintiff in error admitted that he had been guilty of such an offence, the judgment of the justice was right and properly affirmed by the Supreme Court."

(As if our legislature before passing the act in question in the revised statutes, had studied all those histories and statutes referred to by the learned Chancellor, and legislated with a sole reference to all that heap of learning, instead of using the words in its *popular sense*, as they most unquestionably did, and in reference to which penal statutes are, above all, to be construed when it gives them a *stricter* construction! Whether the popular sense would enlarge or restrict their meaning in the present case, we have no opinion to offer.)

Upon that question the Chancellor holds that the admission of the defendant before the justice, that he had sold "ale, *or* strong beer, *or* fermented beer, without a license," was only an admission that he had sold some *one* of the three. Upon this part of the case, he says. "But the term *fermented beer* in the connection in which it was used, might well have been understood by Nevin as intended to cover a charge of selling some of the various kinds of beer which have long been in use in this country under the different names of spruce beer, spring beer, ginger beer, molasses beer, &c. Each of these may very properly be termed fermented beer, as fermentation to a certain extent is necessary to fit them for use." On this

ground alone the Chancellor declared he should vote for a reversal.

Barlow, Spencer and Wright, senators, delivered written opinions for reversal, in which they maintained that the question whether *ale* or *strong beer* were within the prohibitions of the excise laws did not arise in the case; it not being shown, as they construed the return, that the defendant had sold such liquors by retail.

The judgment must therefore be considered as reversed on that ground only, and the Chancellor's *dictum* of thirteen pages on the other point is clearly *obiter*, and of no authority as a judicial decision.